UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 1:07-CR-100 |
| ) | |
| CHARLES A. BOYCE ) | |

### MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the Motion to Suppress Evidence filed by the Defendant, Charles A. Boyce ("Boyce") on March 20, 2008. For the reasons set forth herein, the motion is DENIED.

### DISCUSSION

Boyce was charged by way of an Indictment filed on December 19, 2007, with one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Docket at 1. On March 20, 2008, Boyce filed the present Motion to Suppress Evidence. Docket at 16. The court held an evidentiary hearing on the motion on April 22, 2008. Docket at 21. At the conclusion of that hearing, the court instructed the parties to file briefs concerning the motion. *Id.* Boyce filed his brief in support of his motion on May 29, 2008 (Docket at 23–"Defendant's Brief"). The government filed its brief in opposition to the motion on June 16, 2008 (Docket at 25–"Government's Brief") and Boyce filed his reply brief on July 16, 2008 (Docket at 28–"Defendant's Reply"). Also at the hearing, the court directed the court reporter to file a transcript of those proceedings and that transcript was filed on May 14, 2008 (Docket at 22).

The following facts are undisputed. On November 27, 2007, Boyce was pulled over by Fort Wayne Police patrol officer Marc Deshaies. Deshaies testified that the day before, Fort Wayne Police had issued a radio notice to its patrol officers that a silver Ford Taurus containing several African American males had been seen in the "southeast quadrant" of Fort Wayne and that the occupants "were suspected to go on a shooting spree . . ." and that they had been "making threats to shoot up a house in the southeast quadrant." Transcript of Hearing on Motion to Suppress Held April 22, 2008 (hereinafter "Tr."), pp. 6-7. On the day in question, Deshaies was patrolling the southeast quadrant of the city. *Id.*, pp. 5 and 6. Deshaies was stopped at a stoplight at the intersection of Pontiac and Hanna streets, facing east, when he noticed a silver Ford Taurus across the intersection from him, facing west. *Id.*, p. 6. When the light turned green, both Deshaies (who was driving a fully marked police cruiser) and the silver Ford Taurus proceeded through the intersection. *Id.*, p. 8. As the two vehicles passed each other, Deshaies testified that "[t]he driver [of the Ford Taurus] looked at me in my car. Immediately, when he saw me, he turned, looked down, looked away, shielding his face from me as he passed by." *Id.* Deshaies testified that when someone looks at him, then looks away and tries to shield their face from him, it arouses suspicion. *Id.* Consequently, as a result of what Deshaies interpreted as suspicious behavior on the part of the driver of the Taurus and due to the report aired the previous day, Deshaies turned around and followed the Taurus with the intent to "see who the registered owner was, make sure the plates and everything was [sic] valid, check what information was available on the car from outside." *Id.*, p. 9. As soon as he turned around, Deshaies noticed that the Taurus had increased its speed substantially, causing Deshaies to "accelerate, get around traffic, exceed the speed limit all the way down Pontiac trying to catch up

2

to the vehicle." *Id*. Deshaies testified that he was exceeding the posted speed limit by at least 20 miles per hour in an attempt to catch up to the Taurus. *Id*., p. 10. Deshaies was able to get close enough to the vehicle to get the license plate number on the Taurus which he then fed into his in-car computer. *Id*. Deshaies had not yet activated his emergency lights, but he was becoming "fairly concerned that the vehicle was leading me on a pursuit . . . due to the speed and the immediate turns that it was starting to make." *Id*., pp. 10-11. Deshaies's computer check revealed that the Taurus was registered to Charles Boyce. *Id*., p. 13. Deshaies testified that he then "ran Mr. Boyce's name in my computer and got a direct–what we call confirmation hit for a warrant out of state." *Id*. Deshaies was then able to pull up a photo of Boyce on his computer and "knew it was the driver that I passed at Pontiac and Hanna." *Id*., p. 14. At that point, Deshaies activated his emergency lights and initiated a traffic stop. *Id*., p. 15. Deshaies approached the Taurus, asked Boyce to produce his driver's license and registration form, and noticed that Boyce was "patting about his waist with his hands." *Id*., p. 16. Deshaies became concerned that Boyce might have a weapon. *Id*. After Boyce produced an Indiana identification card, Deshaies instructed him to exit his vehicle so the officer could place Boyce in handcuffs. *Id*., p. 17. When Boyce asked Deshaies why he was being placed in handcuffs, the officer told him that "he had an out of state warrant for his arrest out of California." *Id*. Boyce told Deshaies that he knew about the California warrant but that California "did not want to extradite him." *Id*., p. 19. Deshaies informed Boyce that he would have to detain him in order to confirm the information about the warrant. *Id*. Once Boyce was handcuffed, Deshaies performed a "pat down" search to ensure that Boyce did not have a weapon on him. *Id*., p. 19. When he did so, Deshaies felt "something big balled up in [Boyce's] pocket." *Id*., p. 20. When Deshaies

3

removed the item, he noticed it was a "nylon style wave cap" and he proceeded to place the cap on the roof of the vehicle. *Id*. When he did so, "a small white waxy rock fell out of the wave cap onto the top of the car." *Id*. Based on his experience as a police officer, Deshaies "knew it to be crack cocaine . . . ." *Id*. Deshaies transported Boyce to the Fort Wayne Police Department, where he later learned that the California warrant for Boyce was still active. *Id*., p. 21. During an inventory search of Boyce's vehicle subsequent to his arrest, police discovered "close to over [sic] a hundred grams of crack cocaine in the back seat and over thirty grams of marijuana in the back seat as well as scales . . . ." *Id*.

On cross-examination by Boyce's counsel, Deshaies admitted that there were probably quite a few silver Ford Taurus cars driving around Fort Wayne at any given time. *Id*., p. 24. Deshaies also testified that at the time of the incident at issue, Boyce was the only occupant of the Ford Taurus, while the notice aired the previous day stated that the suspicious silver Ford Taurus was occupied by "several" male blacks. *Id*., pp. 24-25. When asked about the item he retrieved from Boyce's pocket, Deshaies testified that it was approximately the size of a softball and was a "bulge on the outside front pocket of his sweatshirt." *Id*., p. 31. Officer Deshaies was the only witness the government produced at the suppression hearing and Boyce presented no evidence.

In his motion to suppress, Boyce argues that Deshaies "did not have sufficient specific and articulable facts as to the reported incident that would have justified the stopping of Defendant's vehicle." Motion to Suppress, p. 1. Boyce further contends that "no basis existed upon which the officer could conclude that the driver of the vehicle was, in fact, the registered owner of the vehicle and, thus, the person wanted for the out-of-state warrant." *Id*., pp. 1-2.

4

Consequently, Boyce maintains that all evidence seized during and after the traffic stopped should be suppressed. *Id*.

Boyce's suppression argument is twofold. First, he claims that Deshaies had no reasonable suspicion to initiate an investigatory stop of Boyce's vehicle since there were "more than likely hundreds, if not thousands, of such silver Ford Tauruses roaming the streets of Fort Wayne, Indiana, on that particular evening." Defendant's Brief, p. 4. Second, Boyce argues that Deshaies only saw Boyce "for a very brief period from a distance of perhaps fifteen (15) feet away, in poor light, and for a very brief time." *Id*., p. 5.[1] Boyce contends that "the facts as they existed were not sufficient to provide a reasonable suspicion that the driver of the [Ford Taurus] was the person identified on the computer . . . as Charles Boyce." *Id*.

In addition to challenging the traffic stop, Boyce argues that the pat-down search Deshaies performed, which resulted in the discovery of crack cocaine, violated Boyce's Fourth Amendment right to be free of unreasonable search and seizure. *Id*., p. 6. Boyce claims that Deshaies searched him and removed the item from Boyce's pocket as a result of an unreasonable belief that Boyce might be armed. *Id*. Boyce argues that nothing in the undisputed factual scenario presented was sufficient to produce in Deshaies a reasonable suspicion that Boyce was armed. *Id*., p. 7. Boyce makes no mention of the fact that he was exceeding the speed limit after Deshaies began following him, or that he made a series of quick and apparently random turns during that time, nor does he present any evidence or even argument that those facts are not true. Furthermore, Boyce does not dispute the fact that he was the subject of an outstanding warrant

---

[1] Deshaies testified that he encountered Boyce at dusk on the evening in question and, of course, that Boyce quickly turned and concealed his face from Deshaies as the two men passed each other in their vehicles.

5

issued in California.

> In its response brief, the government summarizes its argument as follows:
>
> In arguing an insufficient basis for the traffic stop, the Defendant alleges that the description of the drive-by shooting vehicle was too general to justify the stop and that it was not reasonable to suspect a registered owner to be driving his own vehicle. The government asserts that the stop was not based upon a match to the description of the car involved in the threatened shooting; rather, the stop was justified (1) because, observing considerable evasive behavior, Officer Deshaies reasonably suspected that the driver was the registered owner who was wanted on an outstanding arrest warrant and (2) because the Defendant was speeding. Ultimately, even if the traffic stop was improper, the arrest warrant dooms the Defendant's challenge because it is an independent source justifying his arrest.

Government's Brief, pp. 5-6. It is the government's position, then, that the totality of the circumstances justified both the traffic stop and the pat-down search of Boyce on November 27, 2007.

Police officers may conduct an investigatory stop of an individual if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). When evaluating whether reasonable suspicion was present, a court must examine the totality of the circumstances known at the time of the stop, viewed from the standpoint of an objectively reasonable police officer. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005). The court's determination of reasonable suspicion should be based on commonsense judgment and reasonable inferences about human behavior. *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005).

In the present case, Deshaies spotted Boyce driving a silver Ford Taurus in the southeast quadrant of Fort Wayne, the same quadrant in which a notice was aired the previous day over police radios that a similar vehicle was suspected of being involved in criminal activity. When Deshaies passed Boyce, Boyce made what Deshaies believed were evasive movements. When

Deshaies turned around to follow Boyce, he testified that he did so with the intent to ensure the vehicle had a valid license plate, attempt to identify the registered owner of the vehicle via the computer in his squad car, and gather as much information as possible based on the outward appearance of the vehicle. Tr., p. 9. However, as soon as Deshaies turned his patrol car around, Boyce sped up, exceeding the speed limit by some 20 miles per hour and making several rapid and apparently random turns. Before he activated his emergency lights and before Boyce finally stopped his vehicle, Deshaies was able to ascertain that the car was registered to Charles Boyce and that there was a pending warrant for Boyce's arrest that had been issued in California. These facts clearly constitute reasonable suspicion to stop Boyce at least long enough to positively identify him and assess the situation. As the government points out, the fact that Boyce was speeding was sufficient, in and of itself, to justify a traffic stop.

Once he pulled Boyce over and approached his vehicle to examine his driver's license and registration, Deshaies noticed that Boyce was "patting about his waist" with his hands and that he "wasn't accessing his pockets" to retrieve his license as Deshaies had instructed. Tr., p. 16. Based on that behavior and the fact that Deshaies had to detain Boyce long enough to determine the status of the California arrest warrant, the officer placed Boyce in handcuffs and conducted a pat-down search. After feeling a large object in Boyce's pocket during the pat-down, Deshaies removed what turned out to be a cap. When he placed that cap on the roof of the car (either Boyce's car or the patrol car–the record is not clear on that immaterial point), Deshaies noticed a small, white, rock-like object fall out of the cap.

As stated, Boyce attempts to make hay out of the fact that even though the Ford Taurus

7

was registered to Boyce, and even though Deshaies learned that there was an outstanding arrest warrant for Boyce out of California, Deshaies nevertheless did not have reasonable suspicion to initiate a traffic stop since he had no assurance that the person driving the Taurus was actually Boyce. Defendant's Brief, p. 5. This argument, however, is unavailing. This court previously has held that it is objectively reasonable for a police officer to infer that the registered owner of a vehicle is driving his own vehicle, thereby justifying a traffic stop at least to positively identify the driver. *See United States v. Turner*, 2002 WL 257517 at * 6-7 (N.D. Ind., Feb. 20, 2002) (unpublished opinion). Finally, as the government points out, "[e]ven if the Court concluded that there was an insufficient reason to stop Boyce's car despite the registered owner's warrant and the speeding violation, the outstanding arrest warrant furnished probable cause to arrest Boyce independent of the circumstances of the initial stop." Government's Brief, pp. 9-10 (citing *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004) ("It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant.")).

The government also contends, correctly in the court's opinion, that the pat-down search Deshaies performed on Boyce was reasonable under the circumstances. Already aware that an out-of-state arrest warrant was pending for Boyce, Deshaies had a legitimate reason to detain Boyce while he attempted to confirm Boyce's identity and ascertain the status of the California warrant. Consequently, the act of handcuffing Boyce and conducting a pat-down search for weapons was reasonable, proper and legal. However, even assuming for the sake of argument that the pat-down was somehow improper or unwarranted, the government takes the position that *any* search of Boyce's person or his vehicle was perfectly justified once Deshaies discovered that

8

Boyce could be arrested on the outstanding warrant. Government's Brief, p. 10. It is black letter law, of course, that once a person is lawfully arrested, searches incident to that arrest are valid and not subject to the limitations set forth in *Terry*. On the contrary, a lawful arrest establishes the authority for a full search of the person. *United States v. Robinson*, 414 U.S. 218, 234 (1973). An arrestee's vehicle may also be search without a warrant if a police officer has probable cause to believe that contraband or evidence of a crime is present in the vehicle. *United States v. Patterson*, 65 F.3d 68, 70 (7th Cir. 1995). In support of this argument the government again cites the case of *United States v. Johnson*, 383 F.3d 538 (7th Cir. 2004), a case with facts remarkably similar to those in the present case. In *Johnson*, the defendant was pulled over by a police officer in what the district court ruled (and the appellate court later agreed) was a stop based on a lack of reasonable suspicion. However, after he was stopped police recognized Johnson and knew that he had an outstanding warrant. Johnson was placed under arrest for that reason. Officers then conducted a pat-down search of Johnson during which they removed his cap. When the officers placed the cap back on Johnson's head a packet containing an off-white powder, which the officers believed to be a controlled substance (and which was subsequently determined to be powder cocaine) fell out and landed on Johnson's shoulder. Officers placed Johnson in the back of a patrol car and then proceeded to search Johnson's car, including the trunk, in which they discovered a loaded handgun. Ruling on Johnson's motion to suppress, the trial court held that while police lacked reasonable suspicion to stop Johnson's car in the first place, the arrest on the outstanding warrant as well as the subsequent search of Johnson's person and vehicle were both valid. Johnson ultimately entered a conditional guilty plea, reserving his right to appeal the trial court's denial of his motion to suppress. The Seventh Circuit Court of

9

Appeals affirmed the trial court's ruling. *Johnson*, 383 F.3d at 545-46. The appellate court held as follows:

> [D]espite the fact that the initial stop was unlawful, evidence seized as a result of the unlawful traffic stop may be introduced into evidence at trial if intervening circumstances establish that the evidence came about without "exploitation of that illegality [and] instead by means sufficiently distinguishable to be purged of the primary taint." *Green,* 111 F.3d at 520 (quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

*Id.*, p. 544.

In the present case, Deshaies had a legitimate reason to initiate a traffic stop based solely on the fact that Boyce was exceeding the speed limit (and seemingly attempting to evade police, thereby also arguably giving rise to reasonable suspicion). He had probable cause to arrest Boyce as soon as he learned that Boyce had an outstanding warrant against him. The officer also had a legitimate reason, based on all of Boyce's evasive behavior and the discovery of the crack cocaine in the cap in Boyce's pocket, to search Boyce's vehicle for any additional contraband (which, of course, was discovered). Considering the totality of the circumstances, the undisputed facts presented, and the applicable law, and the arguments of counsel, the court determines that Boyce's motion to suppress should be denied.

## CONCLUSION

For the reasons discussed herein, the Motion Suppress Evidence file by the Defendant, Charles Boyce, is DENIED.

Dated: August 20, 2008.

                                                    /s/ William C. Lee
                                                    William C. Lee, Judge
                                                    United States District Court