# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No.: 1:07-CR-100 |
| | ) | |
| CHARLES A. BOYCE | ) | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court for resolution of three pending motions filed by the defendant, Charles A. Boyce ("Boyce"). On February 5, 2009, Boyce filed a Motion for Production of Grand Jury Transcript and a memorandum in support thereof. Docket at 49 and 50, respectively. The United States of America ("the government") filed a response to that motion on February 17, 2009. Docket at 53. Boyce did not file a reply brief. Also on February 5, Boyce filed a Motion to Reconsider Defendant's Motion to Suppress and to Submit Additional Evidence and a memorandum in support thereof. Docket at 45 and 46, respectively. The government filed a response in opposition to that motion on February 19 (docket at 56) and Boyce filed a reply on March 11 (docket at 58). Finally, Boyce filed a Motion to Dismiss for Loss of Evidence and a memorandum in support thereof. Docket at 47 and 48, respectively. The government filed its brief in opposition to that motion on February 19 (docket at 57) and Boyce filed a reply on March 16 (docket at 59). For the reasons discussed below, the Motion for Production of Grand Jury Transcript is DENIED; the Motion to Reconsider Defendant's Motion to Suppress and to Submit Additional Evidence is GRANTED in part and DENIED in part; and the Motion to Dismiss for Loss of Evidence is set for evidentiary hearing on May 11, 2009, at 9:30 a.m. The final pretrial set for May 8, 2009, and the trial set for May 11, 2009, are hereby

VACATED and will be reset following the evidentiary hearing.

## FACTUAL BACKGROUND

On November 27, 2007, Boyce was pulled over by Fort Wayne Police patrol officer Marc Deshaies. Deshaies testified that the day before, Fort Wayne Police had issued a radio notice to its patrol officers that a silver Ford Taurus containing several African American males had been seen in the "southeast quadrant" of Fort Wayne and that the occupants "were suspected to go on a shooting spree . . ." and that they had been "making threats to shoot up a house in the southeast quadrant." Transcript of Hearing on Motion to Suppress Held April 22, 2008 (hereinafter "Tr."), pp. 6-7. On the day in question, Deshaies was patrolling the southeast quadrant of the city. *Id.*, pp. 5 and 6. Deshaies was stopped at a stoplight at the intersection of Pontiac and Hanna streets, facing east, when he noticed a silver Ford Taurus across the intersection from him, facing west. *Id.*, p. 6. When the light turned green, both Deshaies (who was driving a fully marked police cruiser) and the silver Ford Taurus proceeded through the intersection. *Id.*, p. 8. As the two vehicles passed each other, Deshaies testified that "[t]he driver [of the Ford Taurus] looked at me in my car. Immediately, when he saw me, he turned, looked down, looked away, shielding his face from me as he passed by." *Id.* Deshaies testified that when someone looks at him, then looks away and tries to shield their face from him, it arouses suspicion. *Id.* Consequently, as a result of what Deshaies interpreted as suspicious behavior on the part of the driver of the Taurus and due to the report aired the previous day, Deshaies turned around and followed the Taurus with the intent to "see who the registered owner was, make sure the plates and everything was [sic] valid, check what information was available on the car from outside." *Id.*, p. 9. As soon as he turned around, Deshaies noticed that the Taurus had increased its speed substantially, causing

Deshaies to "accelerate, get around traffic, exceed the speed limit all the way down Pontiac trying to catch up to the vehicle." *Id*. Deshaies testified that he was exceeding the posted speed limit by at least 20 miles per hour in an attempt to catch up to the Taurus. *Id*., p. 10. Deshaies was able to get close enough to the vehicle to get the license plate number on the Taurus which he then fed into his in-car computer. *Id*. Deshaies had not yet activated his emergency lights, but he was becoming "fairly concerned that the vehicle was leading me on a pursuit . . . due to the speed and the immediate turns that it was starting to make." *Id*., pp. 10-11. Deshaies's computer check revealed that the Taurus was registered to Charles Boyce. *Id*., p. 13. Deshaies testified that he then "ran Mr. Boyce's name in my computer and got a direct–what we call confirmation hit for a warrant out of state." *Id*. Deshaies was then able to pull up a photo of Boyce on his computer and "knew it was the driver that I passed at Pontiac and Hanna." *Id*., p. 14. At that point, Deshaies activated his emergency lights and initiated a traffic stop. *Id*., p. 15. Deshaies approached the Taurus, asked Boyce to produce his driver's license and registration form, and noticed that Boyce was "patting about his waist with his hands." *Id*., p. 16. Deshaies became concerned that Boyce might have a weapon. *Id*. After Boyce produced an Indiana identification card, Deshaies instructed him to exit his vehicle so the officer could place Boyce in handcuffs. *Id*., p. 17. When Boyce asked Deshaies why he was being placed in handcuffs, the officer told him that "he had an out of state warrant for his arrest out of California." *Id*. Boyce told Deshaies that he knew about the California warrant but that California "did not want to extradite him." *Id*., p. 19. Deshaies informed Boyce that he would have to detain him in order to confirm the information about the warrant. *Id*. Once Boyce was handcuffed, Deshaies performed a "pat down" search to ensure that Boyce did not have a weapon on him. *Id*., p. 19.

When he did so, Deshaies felt "something big balled up in [Boyce's] pocket." *Id*., p. 20. When Deshaies removed the item, he noticed it was a "nylon style wave cap" and he proceeded to place the cap on the roof of the vehicle. *Id*. When he did so, "a small white waxy rock fell out of the wave cap onto the top of the car." *Id*. Based on his experience as a police officer, Deshaies "knew it to be crack cocaine . . . ." *Id*. Deshaies transported Boyce to the Fort Wayne Police Department, where he later learned that the California warrant for Boyce was still active. *Id*., p. 21. During an inventory search of Boyce's vehicle subsequent to his arrest, police discovered "close to over [sic] a hundred grams of crack cocaine in the back seat and over thirty grams of marijuana in the back seat as well as scales . . . ." *Id*. Boyce was charged by way of an Indictment filed on December 19, 2007, with one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Docket at 1.

## DISCUSSION

**1. Motion for production of grand jury transcript.**

In this motion, Boyce asked for a copy of the grand jury testimony of Officer Marc Deshaies. Motion for production, p. 1. However, the government points out in its response brief that "Officer Marc Deshaies did not testify before the grand jury in the Defendant's case, and such a transcript therefore does not exist." Government's Response, p. 1. As stated at the outset, Boyce did not file a reply brief regarding this motion, which the court infers indicates he does not intend to pursue the motion in light of the government's response. Since the remedy sought in the motion cannot be granted since the requested transcript does not exist, the motion for production is DENIED.

4

## 2. Motion for reconsideration.

In his motion for reconsideration, Boyce asks the court to revisit (and reverse) its Opinion and Order entered on August 20, 2008 (docket at 29) in which the court denied Boyce's motion to suppress evidence. Motion to Reconsider, p. 1. Boyce also asks the court to admit what he labels as new evidence. *Id*. The new evidence Boyce seeks to have admitted into the record consists of: 1) a Fort Wayne Police Officer Supplemental Report prepared on November 29, 2007, by Officer B. Springer; 2) the Affidavit of Probable Cause drafted by Officer Deshaies; and 3) a document titled a Fort Wayne Police State Link Message. Defendant's Motion to Reconsider, Exhibits A, B and C. Exhibit A is a report summarizing the incident reported to police on November 26, 2007, in which a citizen alleged that she and her son were confronted by four black males and two black females in a silver Ford Taurus, and that two of those males were armed with handguns. Exhibit A. This is the written version of the radio report Deshaies testified he heard the day before he stopped Boyce. Exhibit B is the affidavit Deshaies prepared documenting his encounter with Boyce and the subsequent traffic stop, arrest, and search. Exhibit C is a document stating that an arrest warrant for Charles Boyce was active in the State of California.

Boyce seeks to admit these exhibits into the record at this point since, he says, they "were not available at the hearing on April 22, 2008." Motion to Reconsider, p. 1. The government, in its response brief, claims that these documents were provided to defense counsel *prior* to the suppression hearing. Government's Response to Motion to Reconsider, pp. 2-3. In fact, the government maintains that "28 pages of discovery materials" were provided to defense counsel on January 28, 2008, the day Boyce was arraigned in this case, and that defendant's Exhibit C

was among them. *Id*. The government also states that on April 10, 2008, it provided defense counsel with additional discovery materials, which included, *inter alia*, defendant's Exhibits A and B. *Id*. In his reply brief, Boyce concedes that he was in error about the date on which these documents were made available by the government. Defendant's Reply, p. 1. But this issue does not amount to anything anyway, since the court concludes, as discussed below, that the three exhibits do not change the court's original analysis and conclusion regarding Boyce's motion to dismiss. Furthermore, in his reply, Boyce states that he is merely requesting that the documents be admitted now "as additional evidence" to be considered by the court in relation to his motion to reconsider. *Id*., p. 2. Therefore, the court will GRANT Boyce's motion to admit the exhibits and will discuss them in the context in which they are offered.

Boyce uses the three "new" exhibits to challenge the testimony presented by Officer Deshaies at the suppression hearing. For example, Exhibit A states that the armed individuals were riding in a "*grey* Ford Taurus." In his testimony, Deshaies stated that the suspect vehicle was a "silver Ford Taurus." Defendant's Memorandum, p. 2 (citing Transcript of Suppression Hearing, p. 24). Also, Boyce points out that the report states that the grey Ford Taurus was occupied by four males and two females, but that when Deshaies encountered Boyce the next day, Boyce was alone in his vehicle. *Id*. According to Boyce, "[w]hat Deshaies saw on November 27, 2007 was a Ford Taurus of a different color than what had been reported in the incident; occupied not by six (6) individuals, but by one (1) black male . . . . Boyce contends there was absolutely no basis upon which Deshaies could claim that he somehow had a basis to believe that the Boyce vehicle had been involved in the incident from the day before and that he should turn his vehicle around and follow the Boyce vehicle." *Id*.

Boyce next challenges Deshaies's credibility by arguing that Exhibit B, Deshaies' own affidavit, contradicts the officer's testimony at the suppression hearing. *Id.*, pp. 3-5. According to Boyce, the affidavit states that "Deshaies . . . informed Boyce 'that he had an out-of-state warrant for his arrest[.]," and that Deshaies "contended at [the time of the traffic stop] that he was only detaining Boyce on the warrant." However, the affidavit also states that Boyce "was then placed [in] double-locked and spaced cuffs until the Affiant could confirm the out-of-state warrant. The Defendant was then searched incident to arrest . . . ." *Id.*, p. 3. Boyce argues that during his testimony, Deshaies insisted that he "was going to detain [Boyce] on the warrant" and admitted that patrol officers were not permitted "to confirm warrant status until we have that person in custody . . . we have to confirm that person's warrant, prior to taking that person to jail, to be sure that the county or the jurisdiction that has issued the warrant is still willing to extradite on that warrant." *Id.*, p. 4 (citing Tr., pp. 17-18). Boyce points out that the printout (Exhibit C) clearly indicates that "there would be no extradition outside the State of California."[1] Thus, according to Boyce, Deshaies' statements in his affidavit directly contradict his testimony. *Id.*, p. 4. Boyce further argues that Deshaies "had no basis for stopping Boyce, other than his contention that there was an outstanding warrant from the State of California on the owner of the vehicle. The warrant was not an afterthought. It was the essence of the reason why Officer Deshaies was pulling Boyce over." *Id.*, p. 5.

In its brief in opposition, the government maintains that "the Defendant reiterates the same arguments that he previously made in his suppression briefs, even though he now attempts

---

[1] Specifically, Exhibit C contains the phrase "MIS/NO EX OUTSIDE CA DOJ," which Boyce claims indicates California did not intend to extradite.

to dress them up by referencing the 'new' documents." Defendant's Response to Motion to Reconsider, p. 3. The government refers to the difference between a silver vehicle and a grey vehicle as "slight twist" in the defendant's argument that "borders on the ridiculous when [Boyce] attacks Officer Deshaies's credibility based on whatever difference exists between a silver Ford Taurus and a grey Ford Taurus." *Id*. The court agrees. Differentiating "silver" from "grey" is treading a very fine line, but whatever distinction there may be does not destroy Officer Deshaies's testimony, which the court found to be very credible.

As for the alleged discrepancies between Deshaies's affidavit and his testimony at the hearing, the government notes that the probable cause affidavit "is barely a half of a page long. [Deshaies's] incident report [is] over two single-spaced pages, [thus] Officer Deshaies obviously condensed the information in order to supply a summary for purposes of probable cause."[2] *Id*., p. 4. Once again, the government's point (with which the court concurs) is that any discrepancies that could be said to exist between the probable cause affidavit and Deshaies's live testimony are insignificant, despite Boyce's insistence that they demonstrate that Deshaies had absolutely no reason to stop Boyce's vehicle.

Finally, regarding the printout concerning the California arrest warrant, the government contends that Boyce's argument is once again much ado about nothing. As the government puts it, the precise contents of the printout about the California warrant (more specifically, whether Deshaies knew or should have known that it did not contain an extradition provision) were not relevant since "[a]t the time of the warrant check, Officer Deshaies was in the midst of a possible

---

[2] Officer Deshaies's detailed incident report was attached as Exhibit 1 to the government's response brief in opposition to the motion to reconsider.

vehicle pursuit, following the Defendant as he sped away and made multiple turns. . . . For this reason, Officer Deshaies took a quick 'blink' and gathered enough information to confirm that the warrant suspect was the same person as the car's registered owner . . . If the warrant was still in the computer system, the warrant was still active in the issuing jurisdiction." *Id*., p. 5 (citing Tr., p. 26). The government adds that "[a]n officer has probable cause to arrest an individual if that person has an outstanding arrest warrant." *Id*., p. 6 (citing *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004); *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997)). The government also states that "[a]s Officer Deshaies correctly pointed out in his testimony, extradition is a different matter because it involves more of a financial decision by the issuing jurisdiction about whether to prosecute a particular class of wanted individuals." *Id*. Finally, the government notes that once an officer has knowledge of the existence of an arrest warrant, "'[R]equiring officers to ferret out any possible discrepancy before acting on the warrant would permit a 'golden moment to pass,' especially if the person whom they believe the warrant names is on the street.'" *Id*. (quoting *Williams v. Vargas*, 138 Fed.Appx. 839, 841, 2005 WL 1529569 * 1 (7th Cir. June 30, 2005) (unpublished opinion)).

  The government's arguments are well taken. Even more importantly, Boyce's arguments in his motion to reconsider ignore many of the facts and circumstances that led to his arrest. As the court pointed out at length in its August 20, 2008, Opinion and Order, Officer Deshaies spotted the defendant's Ford Taurus (be it silver or grey) in the southeast quadrant of Fort Wayne one day after having received information about a similar vehicle, in the same part of the City, being involved in a crime or possible crime. When Deshaies's patrol car passed next to Boyce's car, Boyce looked very briefly at Deshaies and then turned his head away in what Deshaies felt

9

(based on his law enforcement experience) was an evasive manner. When Deshaies turned his patrol car around to begin following Boyce's car in order to gather more information (including running a report on the car's license plate), Boyce immediately speeded up, causing Deshaies to "accelerate, get around traffic, exceed the speed limit all the way down Pontiac [Street] trying to catch up to [Boyce's] vehicle." Tr., p. 9. The court found Deshaies's testimony on this point to be completely credible and Boyce presented no evidence at the hearing to dispute this version of the initial seconds of the encounter between Deshaies and Boyce. Thus, almost immediately, Deshaies had probable cause to stop Boyce's vehicle based on the fact that Boyce was exceeding the speed limit.[3] While Deshaies continued to pursue Boyce, Boyce began making numerous turns in what Deshaies believed was an attempt to evade the officer. In fact, Boyce testified that he was becoming "fairly concerned that the vehicle was leading me on a pursuit . . . due to the speed and the immediate turns that it was starting to make." *Id.*, pp. 10-11. During the pursuit, Deshaies was able to read the license plate on Boyce's vehicle and, using his in-car computer, confirmed that the registered owner of the vehicle was Charles Boyce. *Id.*, p. 13. Deshaies was also able to use his computer to obtain a "confirmation hit for a warrant out of state." *Id.* At that point, Deshaies activated his emergency lights and initiated a traffic stop of Boyce's vehicle. *Id.*, p. 15. The details of what happened next, from the point of the stop to the point of Boyce's arrest, are summarized in detail in the court's prior Order and need not be reiterated here. The point is that the court carefully considered the facts and circumstances of the seizure, search, and arrest of Boyce, heard the testimony of witnesses, and examined the exhibits submitted into evidence

---

[3] Or, at the very least, reasonable suspicion to conduct an investigatory traffic stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).

(including the three exhibits tendered by Boyce in his motion to reconsider). The court arrived at its conclusion in its original Order denying Boyce's motion to suppress after considering the totality of the circumstances surround Deshaies's decision to stop Boyce's vehicle. The court's decision was "based on commonsense judgment and reasonable inferences about human behavior" and what Deshaies knew at the time he conducted the traffic stop. *See United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). None of the arguments or the three exhibits Boyce presents in his motion to reconsider alter the court's analysis or conclusion. Accordingly, the motion to reconsider is DENIED.

### 3. Motion to dismiss.

In this motion, Boyce asks the court to dismiss this entire case based on the fact that the Fort Wayne Police Department was unable to produce the in-car videotape from Officer Deshaies's patrol car. Motion to Dismiss, p. 1. Boyce requested a copy of said videotape but "the representation of the Fort Wayne Police Department was that there was nothing preserved on the hard drive of the system that could be retrieved having to do with Boyce's detention and arrest." *Id*. Boyce contends "that the in-car video would provide exculpatory evidence" and that since the police department failed to preserve it (or was unable to retrieve it), this case should be dismissed. *Id*., p. 2.[4] Boyce argues that "the Fort Wayne Police Department should have preserved the hard-drive as evidence in this case and that the continuing use of the hard-drive resulted in the loss of evidence and has prevented the Defendant from either retrieving relevant

---

[4] The court previously granted the defendant's request to retain an expert "who analyzed the hard-drive and retrieved from the hard-drive all available data." Motion to Dismiss, p. 1. The apparent conclusion is that the recording of the traffic stop involving Boyce was "recorded over" and that "the earliest date for which information exists on the hard-drive is October 30, 2008." *Id*.

11

exculpatory data or determining if there was any effort on the part of the Fort Wayne Police Department to tamper with such data." *Id.*, p. 2.

The government responds by explaining that the loss of the videotape was the result of equipment problems with the videotape equipment in Deshaies's patrol car. Government's Response, p. 3. The government also argues that Boyce cannot sustain his burden of demonstrating that the loss of the videotape involved any "bad faith" on the part of law enforcement, and so Boyce is not entitled to relief. *Id.*, p. 5 (citing *Henry v. Page*, 223 F.3d 477, 481 (7th Cir. 2000) and *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.")). The government states that "[i]f the Court were to have an evidentiary hearing, the government would expect to call the president and lead technician of [the company that manufactured the in-car system] and the supervisor of the [Fort Wayne Police Department] Radio Shop to explain how the system works, the technical issues involved with the system, the computer problem causing the inadvertent loss of some video files, and the specific problems with the unit in Officer Deshaies's patrol car." *Id.*, p. 3.

Boyce "maintains that the exculpatory value of the audio and video is that it would provide evidence contradictory to the testimony of Officer Deshaies in respect to the basis for the stop, the search of Boyce, and the claim that drugs were found in the car." Defendant's Reply, p. 2. Boyce also states that "there may be some factual issues that need to be resolved by way of a hearing to determine what efforts and when such efforts were made by [the police department] to secure the footage and whether any procedure existed for securing and preserving the video." *Id.*, p. 3.

The court agrees that an evidentiary hearing is necessary to resolve the issue. Accordingly, the court will hold such a hearing on May 11, 2009, at 8:30 a.m. The trial in this case, also scheduled for that date and time, is hereby VACATED, as is the final pretrial conference scheduled for May 8, 2009, at 11:00 a.m. Following the evidentiary hearing, the court will reschedule the final pretrial and trial dates and establish a schedule for any further briefing that may be necessary. The evidentiary hearing now scheduled for May 11, 2009, will be limited to the issue of the missing audio and videotape as it relates to the defendant's motion to dismiss for loss of evidence.

## CONCLUSION

For the reasons set forth above, the defendant's Motion for Production of Grand Jury Transcript is DENIED; his Motion to Reconsider Defendant's Motion to Suppress and to Submit Additional Evidence is GRANTED in part and DENIED in part; and his Motion to Dismiss for Loss of Evidence is set for evidentiary hearing on May 11, 2009, at 9:30 a.m. The final pretrial set for May 8, 2009, and the trial set for May 11, 2009, are hereby VACATED and will be reset following the evidentiary hearing.

Dated: April 17, 2009.

   /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana